IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HTK HAWAII, INC., | ) | CIV. NO. 15-00114 JMS-RLP |
| | ) | |
| Plaintiff, | ) | ORDER: (1) DENYING |
| | ) | DEFENDANTS' MOTION TO |
| vs. | ) | TRANSFER VENUE, DOC. NO. 58; |
| | ) | AND (2) GRANTING IN PART |
| KEVIN SUN; NICOLE YANG, | ) | AND DENYING IN PART |
| | ) | DEFENDANTS' MOTION TO |
| Defendant. | ) | DISMISS, DOC. NO. 61 |
| | ) | |
| _____ | ) | |

## ORDER: (1) DENYING DEFENDANTS' MOTION TO TRANSFER VENUE, DOC NO. 58; AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DOC. NO. 61

## I. INTRODUCTION

On April 2, 2015, Plaintiff HTK Hawaii, Inc. ("HTK") brought this action against Defendants Kevin Sun ("Mr. Sun") and Nicole Yang ("Ms. Yang") (collectively, "Defendants"), seeking, among other things, a declaratory judgment that a document entitled "Contract Agreement For HTK California" (the "Document") is not an enforceable contract.

Two motions are presently before the court. First, Defendants argue that the court should transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Central District of California. Doc. No. 58, Motion to

Transfer.  Second, Defendants argue that, in the alternative, the court should dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. No. 61, Motion to Dismiss.  Based on the following, the court DENIES Defendants' Motion to Transfer, and DENIES IN PART and GRANTS IN PART Defendants' Motion to Dismiss.

## II.  BACKGROUND

### A.  Factual Background

#### 1.  *Allegations of Complaint*

HTK is "a domestic corporation organized under the laws of the State of Hawaii, with its principal place of business in Honolulu, Hawaii."  Doc. No. 51, First Amended Complaint ("FAC")  ¶ 1.  William Hsia is the President of HTK and his wife, Kimberly, is the Treasurer.  Doc. No. 65-1, Hsia Decl. ¶ 4 ("Hsia Decl.").  Mr. Sun and Ms. Yang, also a married couple, are residents of the State of California.  FAC ¶¶ 2, 3.

In or around 2012, Mr. Hsia became friends with Mr. Sun.  *Id.* ¶ 10. "At some point, the Hsias, on behalf of HTK, and the Suns began discussing ways HTK could expand its California sales and operations."  *Id.*  Toward that end, Mr. Sun signed a non-disclosure agreement, *id.* ¶ 11, and "began working as an independent contractor for HTK to learn the shave ice supply business."  *Id.* ¶ 12.

2

Mr. Sun continued working as an independent contractor for HTK through 2014. *Id.* ¶ 19.

HTK alleges that, "in late 2013, Defendants traveled to Hawaii to meet with HTK's officers and discuss the role they could play in the potential expansion of HTK's California operations.  While they were in Hawaii, the parties began preliminary negotiations regarding the expansion." *Id.* ¶ 13.  Ultimately, the parties drafted the "[Document] with the intention of possibly entering into a partnership agreement to further expand HTK's operations in California."  FAC ¶ 15.

Although not attached to the FAC, the court considers the Document, Doc. No. 59-6, because the parties do not question the Document's authenticity and the FAC relies on the Document.  *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).  The Document recites that "[t]he [Defendants] are hereby agreeing to purchase and be responsible for 50% of all gross and profits of HTK Hawaii's sales in the mainland for the sum of $250,000 paid over the period of three years starting January 2014."  *See* Doc. No. 59-6.  The Document outlines various "contract terms and conditions," including, for example, the selling price, a salary for Mr. Sun, and the sharing and accounting of expenses.  *Id.*  The Document is signed by Mr. and Mrs. Hsia as sellers and Defendants as buyers.  *Id.*

3

According to HTK, "[t]he parties did not intend for the [Document] to be a final binding contract between them.  Rather, the [p]arties understood that the [Document] was a step in the negotiation process, and that a formal contract would need to be negotiated and executed between HTK and Defendants."  FAC ¶ 15.  The Complaint further alleges that, "[b]ased on Defendants' representations, HTK understood that the [Document], and any potential partnership, was premised on Defendants' ability to meaningfully expand HTK's California sales and obtain new customers."  *Id.* ¶ 17.  However, "[t]he [Document] did not identify the actual business entity that would be sold, nor did it contain a timeline for the creation of such an entity or subsidiary of HTK."  *Id.* ¶ 18.

At some point during this negotiation process, "HTK made [a] $99,077.62 good faith payment to Defendants."  *Id.* ¶ 38.  Ultimately, HTK alleges that "[s]ignificant disagreements arose between the Parties, and it became clear that any potential business relationship regarding HTK's California operation would never materialize."  *Id.* ¶ 22.  HTK further alleges that, "[o]n December 8, 2014, after the relationship between the Parties had deteriorated, the Defendants unilaterally and without [] HTK's knowledge or consent, filed Articles of Incorporation for Hawaiian Snow California, an S-corporation organized under laws of [the] state of California."  *Id.* ¶ 23.

4

HTK complains that Defendants "have subsequently attempted to enforce the [Document] as a binding contract, despite the fact there was never any intent by the Parties for the [Document] to be binding." *Id.* ¶ 24.  HTK also alleges that, despite Defendants' position that the Document is binding, Defendants have failed to "act in furtherance of the [Document], and their conduct clearly shows their intent that the [Document] was not a binding agreement." *Id.* ¶ 35.  Specifically, HTK alleges the following deficiencies:

A.   Defendants never made a single payment toward the $250,000 purchase price contained in the [Document].

B.   Defendants never paid any of the expenses for HTK's California operations for 2014, even though the [Document] provided that the Suns would share all inventory and other expenses for the mainland business.

C.   Defendants admitted that they did not have any ability to make any payments toward the inventory expenses or alleged purchase price contained in the [Document].

D.   Defendants admitted that Mr. Sun was looking for other business opportunities and employment outside of HTK during the time [Document] was allegedly in effect.

E.   Defendants did not significantly expand HTK's California business or obtain new customers to fulfill the purpose [of] creating the new HTK subsidiary anticipated by the [Document].

F.   The [Document] purports to sell an interest in a subsidiary and/or partnership related to HTK; however, no such subsidiary was ever created that

was legally linked to HTK.

*Id.* ¶ 26.

### 2.   *Additional Facts Relevant to Defendants' Motion to Transfer*[1]

HTK is a Hawaii corporation that sells shave ice products, and its office, officers, employees, operations, accountant, and bank are all located in Hawaii.  Hsia Decl. ¶¶ 1, 3.  HTK also transacts business on the mainland, including in California.  *Id.* ¶ 11.  In mid-2013, Mr. Sun began managing HTK's operations in California.  Doc. No. 60, Kevin Sun Decl. ¶ 5 ("Sun Decl.").  Toward that end, on June 4, 2013, Mr. Sun signed an Employee Confidentiality and Non-Disclosure Agreement, which provides that, among other things, the agreement is governed by the laws of Hawaii.[2]  Doc. No. 59-5, Defs.' Ex. 5 at 3.

The parties subsequently began negotiating a partnership agreement.  Before the parties signed the Document, "Kevin Sun travelled [sic] from California to Hawaii to meet with [Mr. Hsia], as well as HTK's other officers and

---

[1] The court considers these facts in regard to Defendants' Motion to Transfer only and not in regard to Defendants' Motion to Dismiss.

[2] The parties dispute whether Mr. Sun was an employee or an independent contractor of HTK.  Mr. Hsia asserts that HTK engaged Defendants as an independent contractor to expand HTK's operations in California and elsewhere on the mainland.  Hsia Decl. ¶ 13.  In support of the assertion that Mr. Sun was an independent contractor (as opposed to an employee), HTK presents Mr. Sun's 1099-MISC form, which shows that HTK compensated him as a non-employee.  *See* Doc. No. 65-2, Pl.'s Ex. A.

employees."  Hsia Decl. ¶ 13.  "At that meeting in Honolulu, [the parties] began

negotiating a potential business relationship between HTK and [Defendants]."  *Id.*

¶ 14.  Subsequent negotiations were conducted primarily by telephone and email,

*see, e.g.*, Doc. No. 60-1, Defs. Ex. A, although the Hsias also visited California to

discuss the partnership.  Sun Decl. ¶ 7.  *See also* Doc. No. 60-2, Defs.' Ex. B

(email stating that Kim Hsia will be in California on December 6, 2013 and "will

discuss with you further in person").  Ultimately, the Hsias executed the

Document in December 2013, Doc. No. 59-6, and sent it to Defendants in

California, where Defendants signed it.  Sun Decl. ¶ 8.

   HTK subsequently began paying Mr. Sun an annual sum of $36,000,

Doc. No. 59-6, and Defendants managed orders made by customers located on the

mainland, shipped products for these orders, examined possible warehouses for

the partnership, and marketed the business, all from California.  Sun Decl.  ¶ 9; *see*

*also* Doc. No. 60-4, Defs.' Ex. D (checks from HTK to Mr. Sun).  HTK's website

described Mr. Sun as "our current California office representative" who "helps our

mainland customers," and who "has traveled around the States and has a good

knowledge of the mainland sales market."  *See* Doc. No. 59-1, Defs.' Ex. 1.

Despite being located in California, however, Mr. Sun's business cards provided

by HTK stated HTK's Hawaii address.  *See* Doc. No. 65-4, Pl.'s Ex. C.

Under the parties' arrangement, HTK and the Suns worked jointly to meet orders for customers -- a customer would purchase products from HTK, who would ship those products to HS International, who in turn would deliver the products to the customer.  Sun Decl.  ¶ 11; *see also* Doc. No. 60-5, Defs.' Ex. E (invoices).   In carrying out this arrangement, HTK states that HTK did not itself own or rent any real property or warehouse space in California, and instead used Sonical International in El Monte, California as a "drop shipper," a third-party distribution hub and customs broker, to ship goods between HTK's suppliers and customers.  Hsia Decl. ¶¶ 6-7; *see also* Doc. No. 59-2, Defs.' Ex. 2 (invoices from Sonical to HTK charging for "storage," "in/out charge," and "pallelt [sic] fee").  By contrast, Defendants claim that HTK does have a California office.  Sun Decl. ¶ 10.

Mr. Sun also took steps to establish a business in California.  For example, Mr. Sun (1) filed registrations to do business in California under the name "HS International," which lists both Mr. Sun and Mr. Hsia as the registered owners, Doc. No. 59-7, Defs.' Ex. 7; (2) obtained an employer identification number from the Internal Revenue Service for HS International (which Mr. Hsia also signed), Doc. No. 59-11, Defs.' Ex. 11 at 1-3; (3) filed articles of incorporation for "Hawaiian Snow California Corporation" with the California

8

Secretary of State, Doc. No. 59-10, Defs' Ex. 10; and (4) applied for a business

account for HS International with JP Morgan Chase Bank listing himself and Mr.

Hsia as partners, Doc. No. 59-11, Defs.' Ex. 11 at 4-6.

According to Defendants, on July 24, 2014, HTK provided Mr. Sun a

check in the amount of $99,077.62, writing "Bonus" in the memo line.  Doc. No.

60-6, Defs.' Ex. F.  Defendants claim this check was half the profits from January

through July 2014.  Sun Decl. ¶ 12.  By the end of 2014, however, HTK refused to

close the financial books for the California business and refused to share profits

for the second half of 2014.  *Id*. ¶ 13.  The Hsias then suggested a new partnership

agreement, which resulted in an email from Mr. Hsia on January 9, 2015, stating

that he had his attorney "draft a legal document for the partnership with

amendments to the controlling power."  See Doc. No. 60-7, Defs.' Ex. G.  After

Ms. Yang expressed a desire to seek legal advice, the Hsias told Defendants that

they felt Defendants had threatened legal action, and the Hsias subsequently

stopped paying Mr. Sun.  *Id.*; *see also* Sun Decl. ¶¶ 15-16.

The parties now dispute whether the Document is binding.  Toward

that end, both HTK and Defendants filed lawsuits in separate forums -- HTK in

Hawaii, and Defendants in the Superior Court of California (County of Los

Angeles), Doc. No. 27-13, Defs.' Ex. 13.[3]

## B.      Procedural Background

On January 12, 2015, HTK filed its Complaint in the Circuit Court of the First Circuit of the State of Hawaii.  Doc. No. 1-1, Compl.  Defendants removed to this court on April 2, 2015.  Doc. No. 1, Notice of Removal.

On September 8, 2015, HTK filed its FAC.  Doc. No. 51.  The FAC asserts claims for declaratory judgment (Count 1) and unjust enrichment (Count II).  *Id.*  In the alternative, the FAC also alleges claims for breach of contract (Count III), breach of the covenant of good faith and fair dealing (Count IV), and rescission (Count V).  *Id.*

On November 20, 2015, HTK filed a Second Amended Complaint ("SAC").  Doc. No. 57.  Three days later, Defendants filed a Motion to Change Venue,  Doc. No. 58, and a Motion to Dismiss, Doc. No. 61 (collectively, "Defendants' Motions").  Defendants' Motions address the FAC and not the SAC.

On January 6, 2016, the court held a hearing on Defendants' Motions. Doc. No. 72.  At the hearing, the parties agreed that the FAC and not the SAC was the relevant pleading for analyzing Defendants' Motions.

---

[3] On December 17, 2015, the California Court stayed Defendants' case in favor of the Hawaii action.  Doc. No. 71-2, Ex. A.

# III.  STANDARDS OF REVIEW

## A.    Transfer of Venue

Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a)  The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

In deciding a motion to transfer venue, the  court must consider each of the factors enumerated in § 1404(a) -- whether the action could have been brought in the proposed transferee district, the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  In determining whether transfer is appropriate, the Ninth Circuit has articulated several non-exclusive factors that the district court may consider, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice

of forum, (4) the respective parties' contacts with the
forum, (5) the contacts relating to the plaintiff's cause of
action in the chosen forum, (6) the differences in the
costs of litigation in the two forums, (7) the availability
of compulsory process to compel attendance of unwilling
non-party witnesses, and (8) the ease of access to sources
of proof.

*Jones*, 211 F.3d at 498-99.

In weighing these factors, the court remains mindful of what the

United States Supreme Court has termed "the plaintiff's venue privilege." *Atl.*

*Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Texas*, 134 S. Ct. 568,

581 (2013) ("Because plaintiffs are ordinarily allowed to select whatever forum

they consider the most advantageous (consistent with jurisdictional and venue

limitations), we have termed their selection 'the plaintiff's venue privilege.'")

(citation omitted). *See also Van Dusen*, 376 U.S. at 634 ("There is nothing,

however, in the language or policy of § 1404(a) to justify its use by defendants to

defeat the advantages accruing to plaintiffs who have chosen a forum which,

although it was inconvenient, was a proper venue."). That is, even though "courts

have developed a bewildering variety of . . . formulations to describe the weight to

be accorded [to] the plaintiff's initial choice of forum," *see* 15 Fed. Prac. & Proc.

Juris. § 3848 (4th ed.), "[t]here is normally a strong presumption in favor of

honoring the plaintiff's choice of forum." *Creative Tech., Ltd. v. Aztech Sys. Pte.,*

12

*Ltd.*, 61 F. 3d 696, 703 (9th Cir. 1995).

Ultimately, "[t]he [c]ourt balances these factors and will transfer the action if the other forum is **clearly** more convenient." *Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F. Supp. 2d 1232, 1243 (D. Haw. 2003) (emphasis added). And, significantly, the court does not give every factor equal weight. Because "[t]he plaintiff's choice of forum is entitled to significant weight . . . , the defendant must make a strong showing of inconvenience to warrant transfer to another district." *Id.* (quotation marks omitted).

The moving party has the burden of showing that the convenience of parties and the interest of justice heavily favors transfer in order to overcome the presumption in favor of the plaintiff's choice of forum. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Further, "[w]eighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Savage*, 611 F.2d at 279; *see also Jones*, 211 F.3d at 498 ("[T]he district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." (quotations marks omitted)).

**B.     Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## IV. <u>DISCUSSION</u>

### A.   Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)

The court evaluates the Defendants' Motion to Transfer by analyzing both the relative merits of (1) the plaintiff's choice of forum and (2) the enumerated § 1404(a) considerations.  The court addresses each in turn.

#### 1.   *Plaintiff's Choice of Forum*

HTK selected Hawaii as its forum, HTK is a citizen of Hawaii, Hawaii is a proper venue for this action, and there is no evidence that HTK filed this action in bad faith.  Defendants argue that the strong presumption in favor of HTK's choice of forum is overcome in this case "because the events giving rise to this case occurred in California, and because HTK filed this anticipatory suit to forum shop."  Doc. No. 58, Mot. to Transfer at 15.  The court disagrees.

With regard to Defendants' flat assertion that "the events giving rise

15

to this case occurred in California," the evidence is, at best, mixed.  Significantly, Defendants ignore that the "document at the heart of [HTK's] declaratory judgment action," *id.* at 1 -- i.e., the Document --  did not emerge from thin air. Defendants do not dispute that, before the parties signed the Document, "Kevin Sun travelled [sic] from California to Hawaii to meet with [Mr. Hsia], as well as HTK's other officers and employees."  Hsia Decl. ¶ 13.  "At that meeting in Honolulu, [the parties] began negotiating a potential business relationship between HTK and [Defendants]."  *Id.* ¶ 14.  It is therefore evident that, at a minimum, the foundations for the Document occurred in Honolulu.  And, although Defendants' evidence indicates that some subsequent events occurred in California, much of Defendants' evidence *also* demonstrates an ongoing connection to Hawaii.  *See, e.g.*, Doc No. 59-3, Defs.' Ex. 3 (various invoices from California billed to HTK in Hawaii).

In addition, the court is not persuaded by Defendants' assertion that HTK's lawsuit was an "anticipatory lawsuit."  Mot. to Transfer at 14-15. "Generally, a suit is anticipatory when the plaintiff files suit upon receipt of specific, concrete indications that a suit by the defendant is imminent." *Youngevity Int'l. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1383 (S.D. Cal. 2014).  But merely threatening litigation does not necessarily provide

"specific, concrete indications" that a defendant is "planning to file an imminent lawsuit." *Id.* at 1384.

Defendants rely on *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) for the proposition that "[a]nticipatory suits are disfavored because they are aspects of forum-shopping." And, in an effort to prove that HTK was forum shopping, Defendants cite to a January 9, 2015 email from Mr. Hsia to Mr. Sun stating:

> Maybe you did not get your wife's email as to why I have to defend my company and myself. Your wife has clearly threatened us with legal action. Do not blame us for being defensive . . . .When she clearly states she wants to get lawyers involved in the negotiation then we have the right to defend.
>
> All we did was have our attorney draft a legal document for the partnership with amendments to the controlling power and we can all sit down and talk about who is "entitled" to what. However you guys made our negotiation effort turn into possible litigation.

Doc. No. 60-7.

The court disagrees that this email indicates that HTK filed an "anticipatory lawsuit" in order to forum shop. Although Mr. Hsia's email states that Defendants "threatened [HTK] with legal action," the email does not offer any "specific, concrete indications" that Defendants threatened to "file an imminent

17

lawsuit." *See Youngevity Int'l*, 42 F. Supp. 3d at 1383.  Rather, Mr. Hsia's email

complained that Defendants "made [HTK's] negotiation effort turn into a possible

litigation," Doc. No. 60-7, thereby suggesting that the parties were still open to

resolving their dispute without a lawsuit.  *See Youngevity Int'l*, 42 F. Supp. 3d at

1383 ("To the contrary, Renew Life may have filed the Florida Action following

Youngevity's demand letter because it realized resolution of the matter outside the

judicial context was impossible.  Accordingly, the Court finds the Florida Action

was not an anticipatory suit.").

Defendants' authorities are not to the contrary.  Indeed, the cases

Defendants cite all involve situations where "the operative facts have not occurred

within the forum of original selection and that forum has no particular interest in

the parties or the subject matter."  *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d

949, 954.  *See also Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209 (D.

Haw. 2002) (rejecting plaintiff's choice of forum because "'[a] plaintiff's choice

of forum is normally only given substantial deference if the plaintiff is a resident

of the district in which the action is brought'") (quoting *Miracle Blade, LLC v.

Ebrands Commerce Grp., LLC*, 207 F. Supp. 2d 1136, 1155 (D. Nev. 2002));

*Sweet-Reddy v. Vons Cos.*, 2007 WL 841792, at *2 (N.D. Cal. Mar. 20, 2007)

("[I]f the plaintiff's forum lacks any significant contact with the activities alleged

18

in the complaint, the plaintiff's choice of forum will be given considerably less weight.").

Given the foregoing, the court finds that HTK's choice of forum deserves the substantial weight traditionally given to a plaintiff's choice of forum. *Creative Tech.*, 61 F.3d at 703. That is, HTK is entitled to "the plaintiff's venue privilege." *Atl. Marine Const. Co.*, 134 S. Ct. at 581.

### 2. § 1404(a) Considerations

The court next examines the § 1404(a) factors to determine whether the Defendants have made the required "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843.

#### a. Convenience of the parties

The parties dispute which forum is more convenient. The court finds that the convenience of the parties is a neutral factor: HTK is in this forum and Defendants are in the Central District of California, and the forums are therefore equally inconvenient for each party. *See Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D. Cal. 1998) ("A transfer will not be ordered if the result is merely to 'shift' the inconvenience from one party to another."). As such, the court finds this factor is neutral.

19

b.      *Convenience of the witnesses*

The parties also dispute the convenience of the witnesses.  "The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)."  *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005) (quotation marks and citations omitted).  Moreover, "while the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Id.* (quotation marks, citations, and alterations omitted).  "In determining whether this factor weighs in favor of transfer, the court must consider not simply how many witnesses each side has and the location of each, but, rather, the court must consider the importance of the witnesses."  *Id.* (quotation marks and citations omitted).  *See also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (holding, in a forum non conveniens case, that a district court should first "examine[] the materiality and importance of the anticipated witnesses' testimony and then determine[] their accessibility and convenience to the forum"); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955) (explaining that, although district courts have broader discretion under § 1404(a) than under the forum non conveniens doctrine, the relevant factors remain the same and that the plaintiff's choice of forum must still be given appropriate deference).

20

HTK states that its "officers, employees, bank and CPA are all located in Hawaii."  Doc. No. 65, Pl.'s Opp'n at 27.  Defendants have also submitted declarations from three non-party witnesses on the mainland who have declared they will not travel to Hawaii to testify at trial because of personal and professional hardships.  Mot. to Transfer at 24.  *See also* Sun Decl. ¶¶ 21-23.  Specifically, Defendants identified: (1) Scott Leotti, a California customer of HTK; (2) Richard Chen, an accountant for HS International; and (3) Charlie Lee, owner of Sonical International Inc., which stores products for HTK and HS International."  *Id.  See also* Doc. No. 67, Reply at 8.  But because Mr. Lee subsequently communicated to HTK that he wished to "formally retract and void [his] signature" from his declaration and stated that he would, in fact, agree to be a witness if the case proceeds in Hawaii, Doc. No. 65-5, Pl.'s Ex. D, the court evaluates the relative importance of Mr. Leotti and Mr. Chen to the action.

Defendants argue that these two witnesses "will establish that the parties interpreted the [Document] as a binding contract."  Mot. to Transfer at 8-9.  By contrast, HTK disputes these individuals will be material witnesses, let alone competent witnesses with relevant knowledge.  Opp'n at 27.  As to Mr. Leotti, HTK points out that he "is a single customer of HTK, and there is no evidence that he could not be deposed in California if necessary."  *Id.* at 27-28.  With regard to

Mr. Chen, HTK observes: "Mr. Chen is apparently an accountant for HS

International, and claims to be familiar with certain financial documents, despite

the fact that he has never spoken to HTK's officers, has never spoken to HTK's

accountant, [and] relied solely on Defendants for their assessment of HTK

California's operations." *Id.* at 28.   HTK further points out that there is no

evidence that Mr. Leotti could not be deposed in California.  *Id.*  In response,

Defendants complain that they "should not have to rely on deposition transcripts

to present their case."  Reply at 9 (citing *Costco Wholesale Corp. v. Liberty Mut.*

*Ins. Co.*, 472 F. Supp. 2d 1183, 1194 (S.D. Cal. 2007)).

In weighing the parties' arguments, the court typically "must analyze

the comparative importance of non-party witnesses beyond the subpoena power of

the respective courts." *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1194.

Significantly, Defendants have not persuaded the court that either Mr. Leotti or

Mr. Chen will be an important witness in this action. *Costco Wholesale Corp.*,

472 F. Supp. 2d at 1194 ("The court considers not simply how many witnesses

each side has and the location of each, but also the importance of the witnesses.")

(quotation marks, citations, and alterations omitted).  Rather, at best, both Mr.

Leotti and Mr. Chen appear to be ancillary to this action.

Moreover, the court finds that Defendants failed to "show not only

that the witnesses who would be inconvenienced are key witnesses, but also that their testimony cannot effectively be presented by deposition." *See* 1 A.L.R. Fed. 15, § 8(a), cmt. (1969).  First, Defendants have not meaningfully refuted HTK's argument that Mr. Leotti and Mr. Chen could be deposed in California, if necessary.  Accordingly, there is no evidence that Mr. Leotti and Mr. Chen will be completely unavailable or that their testimony cannot effectively be presented by deposition.  And although Defendants argue that "deposition testimony is disfavored because a party should not be forced to rely on trial by deposition rather than live witnesses," *Costco Wholesale Corp.*, 472 F. Supp. 2d at 1194 n.13, today's modern technology permits the use of the court's videoconferencing capabilities to obtain Mr. Leotti's and Mr. Chen's live testimony from California, if necessary.  Accordingly, this hardship carries less weight than in years past. Thus, while the court recognizes that Hawaii is an inconvenient forum for Mr. Leotti and Mr. Chen, there is no evidence that this inconvenience will meaningfully deprive Defendants of either Mr. Leotti or Mr. Chen's testimony.

Based on the foregoing, the court finds that the "convenience of the witnesses" factor weighs in favor of California, but only slightly.

c.    *The interests of justice*

The final § 1404(a) factor -- "the interests of justice" -- is the most

23

nebulous of the factors, and evaluating this factor necessarily requires considering the totality of the circumstances.  *Jones*, 211 F. 3d at 498 (observing the district court's discretion to decide a motion to transfer venue under § 1404(a) according to an "individualized, case-by-case consideration of convenience and fairness" and holding that the district court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case") (quotation marks and citations omitted).  Toward that end, the court turns to some of the concrete factors the Ninth Circuit has articulated for a court's consideration on a § 1404(a) motion, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id.* at 498-499.[4]

With regard to the first *Jones* factor, the Document was first discussed when Mr. Sun was in Honolulu, Hsia Decl.  ¶¶ 13-14, and subsequent

---

[4]  Because the third and the seventh *Jones* factors were addressed above, the court will not duplicate that analysis here.

24

negotiations took place over the phone and by email.  Thus, this factor slightly favors Hawaii.

With regard to the second *Jones* factor, the parties dispute which venue is most familiar with the governing law.  Further, the parties disagree as to whether Hawaii or California law applies, and the parties' briefing is of little help. And without this help, the court is reluctant to determine whether Hawaii or California law will apply to this action.  Ultimately, though, the legal issues raised in the FAC are straightforward; while Hawaii law and California law differ with regard to some Counts in certain respects, the court is confident that either venue could effectively apply the governing law (whatever that may be) with little difficulty.  Indeed, both venues are experienced at doing so.  *See, e.g.*, *Moddha Interactive, Inc. v. Philips Elec. N. Am. Corp.*, 92 F.Supp.3d 982, 994 (D. Haw. 2015) (applying California law); *Shankar v. United States Dep't of Homeland Security*, 2014 WL 523960, at *9 (N.D. Cal. Feb. 6, 2014) (applying Hawaii law). The court therefore finds this factor is neutral.

With regard to the fourth *Jones* factor, HTK is a Hawaii corporation with its office, officers, employees, operations, accountant, and bank all located in Hawaii, Hsia Decl. ¶¶ 1-3, and Mr. Sun managed HTK's operations in California. Sun Decl. ¶ 5.  It is undisputed that Mr. Sun signed an "employee confidentiality

agreement" with HTK which clearly stated it would "be governed by the laws of the state of **HAWAII**." Doc. No. 59-5. Accordingly, the court rejects Defendants' claim that they "have little to no contacts with Hawaii." Mot. to Transfer at 16. While the court acknowledges that both the Hsias and HTK had contacts with California, the court finds that Hawaii is the forum where the most relevant, meaningful, and sustained contact occurred.

With regard to the fifth *Jones* factor, the court considered this factor at length when discussing plaintiff's choice of forum. And, for the reasons previously discussed, the court finds this factor favors Hawaii.

With regard to the sixth *Jones* factor, the court is persuaded that granting Defendants' motion would delay the August 2, 2016 trial date. *See York v. Jordan*, 2014 WL 309639, at *7 (D. Haw. Jan. 28, 2014) (finding "court congestion and time to trial" weighed in favor of Hawaii when evaluating a motion to transfer venue to the Central District of California). Although delaying a trial date does not necessarily raise a party's costs, these factors are logically intertwined. *See, e.g.*, Fed. R. Civ. P. 1 (requiring that the Federal Rules of Civil Procedure be "employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

By contrast, the court is not convinced by Defendants' arguments

26

regarding relative costs.  The fact that Defendants identified thirteen witnesses in their initial disclosures does not necessarily affect the relative costs of proceeding in Defendants' preferred venue.  In any event, the court's weighing of witnesses on a § 1404(a) motion must be qualitative, not quantitative.  *See, e.g., Saleh*, 361 F. Supp. 2d at 1160.  Moreover, the court is not in a position to evaluate whether HTK, as a corporation, is able to "'more easily travel for litigation than could individuals who are parties to the action.'"  Reply at 14 (quoting *Miracle v. The New York Post*, 87 F. Supp. 2d 1060, 1073-74 (D. Haw. 2000)).  There is no evidence in the record suggesting that *HTK* is flush with the resources of a "large corporation," 87 F. Supp. 2d  at 1073, as was the case in *Miracle*; neither party has submitted a ledger of its available funds.  Finally, the status of both the Hsia's California property and HTK's business activities in California is disputed.

Ultimately, "neither party has made a definitive showing of relative costs," *York,* 2014 WL 309639 at *6, but the court finds that this factor weighs slightly in favor of Hawaii because the inevitable delay in the trial date in California is the most likely factor to raise costs.  *See* Fed. R. Civ. P. 1.

Finally, with regard to the eighth *Jones* factor, the court finds that this factor is neutral.  Both parties have advanced various legitimate reasons as to why their "proof" resides in their respective preferred forum.  Ultimately, the court

27

finds that this factor is neutral.

In light of the foregoing analysis, the court finds that the interests of justice favor Hawaii as the forum.

> d.    *Weighing the § 1404(a) factors*

In sum, the court's findings regarding the three § 1404(a) factors are mixed: while the convenience of the parties is neutral, the convenience of the witnesses slightly favors California, and the interests of justice favor Hawaii. When all the relevant facts are considered, Defendants have failed to meet their burden of making a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843.  Accordingly, the court determines in its discretion that, when viewed together, the § 1404(a) factors do not warrant upsetting HTK's choice of forum. *Id.*  The court therefore DENIES Defendants' Motion to Transfer.

**B.    Motion to Dismiss**

> **1.    Standing**

Defendants first argue that HTK lacks standing to bring suit because HTK is neither a party nor a signatory to the Document.  Doc. No. 61, Mot. to Dismiss at 8.  "[T]he standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of

federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) (internal quotation marks omitted).  That is, "[s]tanding addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  A plaintiff has Article III standing to bring a suit when a plaintiff adequately establishes: "(1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.*, it is 'likely' and not 'merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Sprint Comm'cns. Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273-74 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

HTK clearly meets these requirements.  HTK bases its suit on an "injury in fact": the Defendants' alleged attempts to "enforce the [Document] as a binding contract, despite the fact there was never any intent by the Parties for the [Document] to be binding."  FAC ¶ 24.  This injury is made concrete and particularized by HTK's allegation that "HTK made the $99,077.62 good faith payment to Defendants," *id.* ¶ 38, which unjustly enriched the Defendants because

"there was no binding agreement," *id.* ¶ 40, and also because Defendants "fail[ed] to pay any expenses for HTK's California operations." *Id.* ¶ 41. HTK alleges that Defendants "caused" that injury. And if HTK prevails, this suit will "redress" that injury because Defendants will have to pay HTK what they owe. The court thus concludes that HTK has standing as a party in interest to litigate this action.

Defendants' arguments to the contrary are unpersuasive. Although "[a] breach of contract claim generally requires that the parties be in privity of contract," *Peters v. Lexington Ins. Co.*, 836 F. Supp 2d 1117, 1123 (D. Haw. 2011), a third-party such as HTK may enforce the contract where it was "expressly entered into for the intended benefit of the third party." *Andrew Smith Co. v. Paul's Pak, Inc.*, 754 F. Supp. 2d 1120, 1133 (N.D. Cal. 2010). Here, HTK alleges that "the Hsias and Defendants drafted [the Document] with the intention of possibly entering into a partnership agreement to further expand HTK's operations in California" as a "step in the negotiation process" with the understanding "that a formal contract would need to be negotiated and executed between HTK and Defendants." FAC ¶ 15. *See also id.* ¶ 10 (alleging that Hsias entered into negotiations with the Defendants "on behalf of HTK"). Because HTK alleges the signatories to the Document (i.e., the Hsias and the Defendants) created the Document for the intended benefit of a third party (i.e., HTK), HTK has

standing.

## 2.    *HTK's Declaratory Judgment Claim (Count I)*

HTK's declaratory judgment claim asks the court to find that the

Document is not a valid contract.   Defendants argue that HTK's declaratory

judgment claim "clearly fails as a matter of law because the [Document]

demonstrates on its face that it is a binding, valid contract, and HTK has not

alleged any basis for concluding otherwise.   This is a pure issue of law that the

court can, and should, decide now."   Doc. No. 69, Reply at 3.   The court disagrees.

Under both California and Hawaii, a valid contract requires mutual

assent.  *See, e.g.*, *Uyeshiro v. Irongate Azrep BW LLC*, 2014 WL 414219, at *7 (D.

Haw. Feb. 3, 2014) (applying Hawaii law and finding that "[i]t is axiomatic that

'there must be a meeting of the minds on all essential elements or terms in order to

create a binding contract.'") (quoting *United Public Workers, AFSCME v. Dawson*

*Int'l*, 113 Haw. 127, 141, 149 P.3d 495, 509 (2006)); *First Nat'l Mortg. Co. v.*

*Fed. Realty Inv. Tr.*, 631 F. 3d 1058, 1065 (9th Cir. 2011) (applying California law

and finding that "[c]reation of a valid contract requires mutual assent") (citing

*Kruse v. Bank of Am.*, 202 Cal. App. 3d, 38, 59, 248 Cal. Rptr. 217, 229 (1988)).

Further, in both California and Hawaii, mutual assent is determined by objective

criteria such as the conduct of the parties.  *See Marin Storage & Trucking, Inc. v.*

*Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1050, 107 Cal. Rptr. 2d 645, 52 (2001); *Douglass v. Pfleuger Hawaii, Inc.*, 110 Haw. 520, 531, 135 P. 3d 129, 141 (2006) ("The existence of mutual assent or intent to accept is determined by an objective standard.").

HTK clearly alleges that "[t]he parties never had mutual assent," FAC ¶ 34, because "[t]he parties did not intend for the [Document] to be a final binding contract between them.  Rather, the Parties understood that the [Document] was a step in the negotiation process, and that a formal contract would need to be negotiated and executed between HTK and Defendants."  *Id.* ¶ 15.

Moreover, looking at objective criteria, such as the parties' conduct, *see, e.g.*, FAC ¶ 26,  HTK alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.

Given HTK's detailed factual allegations in support of a critical deficiency of the Document -- i.e., mutual assent -- the court DENIES Defendants' motion to dismiss HTK's claim for declaratory judgment (Count I).

### 3.    *HTK's Unjust Enrichment Claim (Count II)*

Defendants next ask this court to dismiss HTK's unjust enrichment claim (Count II).  Under both Hawaii and California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at

the expense of another. *In re ConAgra Foods, Inc.*, 908 F. Supp.2d 1090, 1113

(C.D. Cal. 2012) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91

Cal. Rptr. 2d 881 (2000)); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL

2441707, at *12 (D. Haw. June 14, 2011) (citing *Porter v. Hu*, 116 Haw. 42, 53,

169 P.3d 994, 1005 (Haw. App. 2007)). Moreover, Hawaii and California law

both provide that an unjust enrichment claim is only proper where there is no

adequate remedy at law. *Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253,

1264 (D. Haw. 2012) (applying Hawaii law), *Paracor Fin., Inc. v. Gen. Elec.*

*Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (applying California law).

HTK alleges that Defendants have been unjustly enriched in two

ways. First, HTK alleges that Defendants were "unjustly enriched by taking the

$99,077.62 paid by HTK when there was no binding agreement." FAC ¶ 40.

Second, HTK alleges that Defendants were "unjustly enriched by failing to pay

any expenses for HTK's California operations." *Id.* ¶ 41. HTK fails to state an

unjust enrichment claim on both fronts.

With regard to the $99,077.62, HTK alleges that, in June 2014, HTK

paid this sum "to Defendants as a good faith commitment to continue discussions

and negotiations regarding the potential partnership." *Id.* ¶ 20. Nowhere,

however, does HTK allege any facts showing that Defendants were unjustly

enriched by accepting this payment (i.e., that HTK did not receive the intended benefit of its payment). Significantly, HTK does not allege that Defendants refused to continue the discussions and negotiations regarding the potential partnership that formed the basis of HTK's payment to Defendants. Accordingly, HTK has failed to plead that Defendants were unjustly enriched by taking the $99,077.62 payment.

With regard to the second portion of Count II, the FAC is unclear as to what benefits Defendants received when they allegedly "never paid any of the expenses for HTK's California operations for 2014, including inventory, shipping costs, and other expenses." *Id.* ¶ 39. Although HTK alleges that the Document "provided that Defendants would pay for 50% of the inventory and other expenses of HTK's California operations," *id.* ¶ 16, HTK nowhere alleges when Defendants were supposed to pay HTK, nor does HTK allege how much the 50% of the inventory and "other" expenses amount to (nor does HTK allege that Defendants have knowledge as to the amount of their alleged share of the expenses). As such, HTK fails to provide Defendants with fair notice as to the nature of its unjust enrichment claim. *See, e.g., Cootey*, 2011 WL 2441707, at *12.

Accordingly, the court GRANTS Defendants' motion to dismiss HTK's claim for unjust enrichment (Count II) with leave to amend. *See Lopez v.*

*Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (stating that the court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts").

### 4.     *HTK's Breach of Contract Claim (Count III)*

Defendants next move to dismiss HTK's breach of contract claim (Count III).[5] "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 250 P.3d 1115, 1121 (2011). *See also Evergreen Eng'g, Inc. v. Green Energy Team LLC*, 884 F. Supp. 2d 1049, 1059 (D. Haw. 2012) (applying Hawaii law).

HTK identifies four ways that Defendants allegedly breached the Document:

> A.     Defendants never paid any of the expenses for HTK's California operations for 2014;
> B.     Defendants never made a single payment toward the alleged $250,000 purchase price contained in the [Document];
> C.     Defendants admitted that they did not have any ability to make any payments toward inventory

---

[5] HTK's Counts III, IV and V are pled in the alternative.

              expenses or the alleged purchase price contained
              in the [Document];

     D.      Defendants did not meaningfully expand HTK's
              California business or obtain new customers.

FAC ¶ 46.  The court is not persuaded that any of these allegations amount to a

"breach" of the Document.

     First, as HTK itself acknowledges, the Document does not contain a

time line.  *Id.* ¶ 18.  Although the Document states that the parties "will share all

rent, mortgage expenses as well as all supply inventory, improvement costs (sic)

that are relating to HTK Hawaii's mainland business," Doc. No. 59-6, the

Document does not provide any time frame indicating when Defendants' share of

expenses would become due to HTK.  Thus, HTK's allegation that "Defendants

never paid any of the expenses for HTK's California operations for 2014," FAC

¶ 46.A, without more, does not amount to an allegation that Defendants breached

the Document because neither the FAC nor the Document provide any indication

that Defendants' share of expenses is past due.

     Second, the Document gives Defendants until January 2017 to pay

the purchase price listed in the Document.  *See* Doc. No. 59-6 ("Selling price of

$250,000 paid through 3 years starting January 2014.").  There is no indication

from either the FAC or the Document that Defendants were obligated to make a

payment toward the purchase price prior to January 2017.  To the contrary, the fact that the Document grants Defendants three years with zero percent interest to pay the $250,000 provides a plausible reason why the Defendants have not yet made a payment (i.e., Defendants could store their money in a high-interest savings account).  In any event, there is no indication that the Defendants' failure to make a payment at this juncture constitutes a breach of the Document.

Third, HTK's allegation that "Defendants admitted that they did not have any ability to make any payments toward inventory expenses or the alleged purchase price contained in the [Document]," FAC ¶ 46, does not establish a breach for the same reasons discussed above.  That is, because neither the Document nor the FAC indicate that Defendants are past due on any payments to HTK, this allegation does not amount to a breach of the Document.  To the extent that HTK is instead attempting to plead that Defendants' conduct constituted an anticipatory breach of the Document, the FAC fails to allege facts that allow the court to plausibly infer that Defendants' statements were a clear, absolute, and unequivocal refusal to perform under the Document.  *See, e.g., In re James E. O'Connell Co., Inc.*, 799 F.2d 1258, 1261 (9th Cir. 1986) (observing that, under California law,  an anticipatory breach includes "a clear, positive, unequivocal refusal to perform") (quotation marks and citations omitted).  *See also*

*Constantino v. U.S. Bank, N.A.*, 2011 WL 4435388, at *8 (D. Haw. Sept. 23, 2011) (explaining that, under Hawaii law, there is no repudiation absent a "distinct, unequivocal and absolute refusal to perform under the terms of the agreement") (quotation marks and citations omitted).

Fourth, the Document only requires that "William [Hsia] and Kevin [Sun] will both work towards expanding mainland business, establishing legal licensing, warehouse, etc, [sic], as soon as condition permits."  Doc. No. 59-6. Significantly, the Document does not require Defendants to "meaningfully" expand HTK's mainland business, nor does the Document require Defendants to acquire new customers.  Moreover, neither the Document nor the FAC indicate when "condition [will] permit[]" Defendants to expand their business.  That is, once again, the lack of a concrete time line in the Document and the failure to allege any time frame in the FAC means that this allegation also fails to allege Defendants breached the Document.

Accordingly, the court GRANTS Defendants' Motion to Dismiss Count III with leave to amend.

### 5.    *HTK's Breach of the Covenant of Good Faith and Fair Dealing Claim (Count IV)*

Defendants next move to dismiss HTK's claim for breach of the

covenant of good faith and fair dealing (Count IV).  The parties disagree as to whether Hawaii or California law applies.  Either way, Count IV fails to state a claim.

Under Hawaii law, Count IV essentially asserts the tort of "bad faith," and this claim "may be justified in actions brought on insurance contracts, but not necessarily in actions brought on other types of contract."  *See Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 132, 920 P.2d 334, 346 (1996) (adopting the tort of bad faith for breach of implied covenant of good faith and fair dealing in an insurance contract).  Put differently, "[i]t may be that a bad faith claim is cognizable outside the insurance context, but it clearly is not cognizable with respect to all contracts."  *Adwalls Media, LLC v. Adwalls, LLC*, 2013 WL 4482501, at *5 (D. Haw. Aug. 20, 2013).  Because the Document is not an insurance contract, and because HTK neither offers a rationale as to why this court should treat the Document as the functional equivalent of an insurance contract nor explains how a bad faith claim applies here, Count IV is not cognizable under Hawaii law.  *See Gold Refinery, LLC v. Aloha Island Gold, LLC*, 2012 WL 518396, at *7 (D. Haw. Feb. 15, 2012) (dismissing claim for bad faith brought on a non-insurance contract).

By contrast, California does recognize a claim for breach of the

implied covenant of good faith and fair dealing as "implied by law in every

contract, including insurance contracts." *Coleman v. Gulf Ins. Grp.*, 41 Cal. 3d

782, 794, 718 P.2d 77, 83 (1986).  Under California law, a plaintiff must allege:

> (1) the plaintiff and the defendant entered into a contract;
> (2) the plaintiff did all or substantially all of the things
> that the contract required him to do or that he was
> excused from having to do; (3) all conditions required
> for the defendant's performance had occurred; (4) the
> defendant unfairly interfered with the plaintiff's right to
> receive the benefits of the contract; and (5) the
> defendant's conduct harmed the plaintiff.

*Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citations

omitted).  It is the plaintiff's burden to establish "'that the conduct of the

defendant, whether or not it also constitutes a breach of a consensual contract

term, demonstrates a failure or refusal to discharge contractual responsibilities.'"

*Id.* (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371,

1395, 272 Cal. Rptr. 387 (1990)).

Count IV alleges that Defendants breached the covenant of good faith

and fair dealing in various ways, including:

> Defendants' admitted inability to pay the alleged
> purchase price contained in the [Document]; Defendants'
> admitted inability to pay their share of expenses for
> HTK's California operations; Defendants' inability to
> meaningfully expand HTK's California operations and
> obtain new customers; Defendants' admission that Mr.

40

> Sun was looking for alternative business opportunities
> and employment while at the same time attempting to
> enforce the [Document] as a bonding [sic] contract; and
> Defendants' filing of the Articles of Incorporation of
> Hawaiian Snow California without HTK's consent.

FAC ¶ 50.  The first three of these allegations duplicate Count III.  With regard to

these three allegations, the court concludes, much like it did in Count III, that

HTK failed to allege "all conditions required for the defendant's performance had

occurred."  *Woods*, 889 F. Supp. 2d at 1194.  The court therefore turns to HTK's

last two allegations in paragraph 50 of the FAC.

First, HTK alleges that Defendants breached the covenant of good

faith and fair dealing because of "Defendants' admission that Mr. Sun was looking

for alternative business opportunities and employment while at the same time

attempting to enforce the [Document] as a bonding [sic] contract."  *Id.*  But the

Document only provides that the parties "will not open another related business

without the other party's knowledge."  Doc. 59-6.  Nowhere does the Document

forbid Defendants from "looking for alternative business opportunities and

employment" in general.  *See* FAC ¶ 50.

While not entirely clear, it may be the case that HTK is trying to

allege that the type of opportunities Defendants were pursuing were related to

HTK's business.  For example, HTK alleges that Defendants "filed for Articles of

Incorporation for Hawaiian Snow California, an S-corporation organized under laws of state of California" without the knowledge or consent of the Hsias, *id.* ¶ 23, but HTK never alleges that Hawaiian Snow California is a "related business" to HTK.  It is certainly possible that Hawaiian Snow California, like HTK, sells shave ice, but HTK has not pleaded any facts that would make this assumption plausible.  Moreover, HTK has not pleaded that registering Hawaiian Snow California is the same thing as "open[ing] another related business."  Doc. 59-6.  That is, HTK never pleads that Hawaiian Snow California was "open" for business in the manner that was proscribed by the Document, and the act of registering a corporation is not the same thing as the act of opening that corporation for business.  As such, HTK fails to allege that "all conditions required for the defendant's performance had occurred."  *Woods*, 889 F. Supp. 2d at 1194.

Second, HTK alleges that "Defendants' fil[ed] . . . the Articles of Incorporation of Hawaiian Snow California without HTK's consent."  FAC  ¶ 50.  But the Document nowhere requires Defendants to seek HTK's consent before filing any legal documents.  Instead, the Document merely states that "William [Hsia] and Kevin [Sun] will both work towards . . . establishing legal licensing."  Doc. No. 59-6.  The document does not, however, indicate that Mr. Sun must first seek HTK's consent prior to doing so.  Nor does the FAC allege that the parties

42

understood the Document to mean that Mr. Sun must first seek HTK's consent.

Accordingly, HTK again failed to allege that "all conditions required for the

defendant's performance had occurred." *Woods*, 889 F. Supp. 2d at 1194.

Based on the foregoing, the court GRANTS Defendants' Motion to

Dismiss Count IV with leave to amend.

### 6. *HTK's Rescission Claim (Count V)*

Defendants next move to dismiss HTK's claim for rescission (Count

V). Whether applying Hawaii or California law, rescission is a remedy and not an

independent cause of action. *See Newcomb v. Cambridge Home Loans, Inc.*, 861

F. Supp. 2d 1153, 1164 (D. Haw. 2012) (applying Hawaii law); *Bischoff v. Cook*,

118 Haw. 154, 163, 185 P.3d 902, 911 (Haw. Ct. App. 2008). *See also*

*Whiterock v. Old Republic Default Mgmt. Servs.*, 2015 WL 3453749, at *7 (N.D.

Cal. May 29, 2015) (applying California law and citing *Mangindin v. Washington*

*Mut. Bank*, 637 F. Supp. 2d 700, 709 (N.D. Cal. 2009)); *Chohrach v. Bank of Am.,*

*N.A.*, 2012 WL 2920800, at *6 (E.D. Cal. July 17, 2012) (applying California

law); *Nakash v. Superior Court*, 196 Cal. App. 3d 59, 69-70, 241 Cal. Rptr. 578,

584 (Ct. App. 1987) ("Rescission is *not* a cause of action; it is a remedy.")

(citations omitted). Accordingly, the court GRANTS Defendants' Motion to

Dismiss as to Count V. Because granting leave to amend rescission as a stand-

43

alone claim would be futile, this claim is dismissed without leave to amend.[6]  *See, e.g.*, *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (explaining that a futile claim is properly dismissed without leave to amend).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the court (1) DENIES Defendants' Motion to Transfer and (2) GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  The only claim remaining in the FAC is HTK's claim for declaratory judgment (Count I).  The court grants HTK leave to file a Third Amended Complaint asserting claims for unjust enrichment, breach of contract, and breach of the covenant of good faith and fair dealing (i.e., HTK may address the deficiencies the court identified in Counts II through IV in HTK's FAC).  In addition, HTK's SAC contains claims for fraud and conversion; HTK may replead those claims in any Third Amended Complaint as well.

///

///

///

---

[6] To be clear, at this time the court is not dismissing (or addressing) the FAC's request for rescission of any contract as a potential remedy.  *See* FAC at 14 ("demand[ing] judgment against Defendants . . . [f]or rescission of any contract").  That is, if HTK chooses to file a Third Amended Complaint, it may be the case that rescission is an appropriate remedy underlying one or more of its claims.

If HTK elects to file a Third Amended Complaint,  it must do so no later than

February 19, 2016.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 25, 2016.




                           */s/ J. Michael Seabright*
                           *J. Michael Seabright*
                           *Chief United States District Judge*


*HTK Hawaii, Inc. v. Sun*, Civ. No. 15-00114 JMS-RLP, Order: (1) Denying Defendants' Motion to Transfer Venue, Doc. No. 58; and (2) Granting in Part and Denying in Part Defendants' Motion to Dismiss, Doc. No. 61